**STEWART | SMITH**
Joseph F. Bermudez (Bar I.D. 2285179)
Michael Murphy *(pro hac vice forthcoming)*
Catherine T. Begley (Bar I.D. 5955992)
1177 Avenue of the Americas, 5th Fl.
New York, NY 10036
Telephone: (720) 665-9400
jbermudez@stewartsmithlaw.com
cbegley@stewartsmithlaw.com
*Attorneys for Plaintiff*
*Great American E&S Insurance Company*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GREAT AMERICAN E&S INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>DAILY HARVEST INC.<br><br>Defendant. | **FIRST AMENDED COMPLAINT AND JURY DEMAND**<br><br>Case No. 1:23-cv-04274<br><br>Hon. Paul A. Engelmayer |

## FIRST AMENDED COMPLAINT

Plaintiff Great American E&S Insurance Company ("Great American"), by its attorneys, STEWART SMITH, as and for its First Amended Complaint against Defendant Daily Harvest, Inc. ("DHI" or "Defendant"), respectfully alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action and venue lies in this district, pursuant to 28 U.S.C. §§ 1332, 1391, 2201, and 2202.

2. Jurisdiction is proper in this Court, because Defendant's principal place of business and corporate offices are located in New York, New York.

3. Defendant is subject to personal jurisdiction within this judicial district at the time this action was commenced.

4. There is diversity among the parties.

5. There exists an actual controversy in excess of $75,000 within this Court's jurisdiction. The parties are also entitled to a declaration of their respective rights and other legal obligations.

## THE PARTIES

6. That at all times hereinafter mentioned, Great American is a foreign corporation, duly organized and existing under and by virtue of the laws of the Ohio with its office and principal place of business located in Cincinnati, Ohio.

7. That at all times hereinafter mentioned, DHI is duly organized and existing under and by virtue of the laws of the State of Delaware.

8. That at all times hereinafter mentioned, DHI has its corporate offices and principal place of business in the State of New York.

## THE PRODUCT CONTAMINATION INSURANCE POLICIES

9. This matter is an insurance coverage dispute arising out of a claim submitted under two insurance policies: a Contaminated Products Insurance Policy issued by North American Specialty Insurance Company ("NASIC") under Policy No. PRL 1000123 00 (the "Primary Policy") and a Product Recall Insurance Policy – Follow Form Excess issued by Great American to DHI under Policy No. PRX2260297-03 (the "Excess Policy") (collectively, "the Policies").

10. Great American seeks a declaration that the Policies do not cover a Loss claimed by DHI because the claim does not constitute an Impairment Covered Incident, is excluded from

coverage based on the application of Exclusions C and V, and because the Loss does not involve an Insured Product.

11. The Primary Policy was in effect from August 9, 2021 to August 9, 2022.

12. The Primary Policy contained several Limits of Insurance including, Impairment – USD 2,000,000 each and every Covered Incident and in the Policy Period aggregate; Governmental Recall – USD 2,000,000 each and every Covered Incident and in the Policy Period aggregate; and Combined Single Annual Aggregate – USD 2,000,000 in the Policy Period aggregate maximum for all Covered Incidents combined.

13. The Primary Policy also contained several Self-Insured Retentions ("SIR") including, Impairment – USD 100,000 each and every Covered Incident and Governmental Recall – USD 100,000 each and every Covered Incident.

14. The Excess Policy was also in effect from August 9, 2021 to August 9, 2022.

15. The Excess Policy's Limits of Insurance were $3,000,000 Each Insured Event and in the Aggregate for the Policy Period, excess of the Underlying Limits of Insurance contained in the Primary Policy.

16. The Excess Policy is excess and follows form to the Primary Policy.

17. The Excess Policy's Insuring Agreement provides as follows,

> **SECTION I: Insuring Agreement**
>
> Except for the terms, conditions, definitions and exclusions of this Policy, the coverage provided by this Policy will follow the First Underlying Policy. If any Underlying Insurance contains a limitation, condition, exclusion or restriction of coverage not contained in the First Underlying Policy, then this Policy will follow form to such limitation, condition, exclusion or restriction of coverage.

18. The Primary Policy's Insuring Agreement states, in pertinent part:

> 1. **Insuring Agreement**
>
> Subject to the terms, conditions, exclusions and other provisions set forth in this policy, the Insurer will indemnify the Insured for:

A. Loss in respect of a **Covered Incident** in excess of the **Self-Insured Retention** and subject always to the **Limit of Insurance** set forth in the Declarations; and

B. **Crisis Consultancy Costs** resulting directly and solely from a Covered Incident,

provided that the **Covered Incident** is first discovered during the **Policy Period** and first reported to the Insurer during the **Policy Period** or within thirty (30) days thereafter in accordance with Section 5. Conditions H. Notice of Loss. The Insurer shall provide indemnification under this Policy provided that the Insured has complied with all of the terms and conditions of this Policy.

19. The Primary Policy's Definitions are found in Section 3 and include the following:

3. **Definitions**

A. "**Accidental Contamination**" shall mean any accidental or unintentional contamination of an **Insured Product(s)** which causes such **Insured Product(s)** to differ from its usual condition, provided that:

i. the **Accidental Contamination** occurs during or as a result of the production, preparation, manufacture, packaging, storage or distribution of the affected **Insured Product(s)**; and

ii. the use or consumption of the affected **Insured Product(s)** has resulted in **Bodily Injury or Property Damage**, or poses actual or imminent danger of resulting in **Bodily Injury** or **Property Damage.**

* * *

D. **"Bodily Injury**" shall mean death, or clear, identifiable internal or external visible physical symptoms or injury, sickness or disease sustained by a person.

E. "**Covered Incident**" shall mean the occurrence of any of the following events:

i. **Adverse Publicity;**

ii. **Governmental Recall;**

iii. **Impairment**;

iv. **Product Tampering**; or

v. **Product Extortion**.

* * *

H. "**Defect**" shall mean a **Mislabeling**, error, omission, deficiency, or inadequacy of an **Insured Product(s)** which causes such Insured Product(s) to differ from its usual condition, provided that:

i. the **Defect** occurs during or as a result of the production, preparation, manufacture, packaging, storage, labeling or distribution of the affected **Insured Product(s)**; and

ii. the use of consumption of the affected **Insured Product(s)** has resulted in **Bodily Injury** or **Property Damage**, or poses actual or imminent danger of resulting in **Bodily Injury** or **Property Damage.**

I. "**Executive Officer**" shall mean any past or present director, officer, partner, trustee, or any manager in the Risk Management, Legal, Compliance, Internal Audit, or Insurance department of the **Insured**; if any designations are not applicable, the equivalent level personnel shall be substituted.

* * *

L. "**Impairment**" shall mean any **Accidental Contamination** or **Defect** of the Insured Product(s), but shall not include defects or shortcomings of any sort in the design of that product or in the research and development leading up to it.

* * *

P. **"Insured Product(s)"** shall mean all topical or ingestible products of the **Insured**, including any of their ingredients, components or packaging, as represented or reported in the submission and application on file with the Insurer, in accordance with Section 5. Conditions, Item D of General Terms and Conditions, that:

i. have been manufactured, handled, stored, distributed or prepared for sale by the Insured;

ii. have been manufactured by a contract manufacturer for the **Insured**; or

iii. are in production or are being prepared for sale by the **Insured**; or

iv. were produced by the **Insured** on behalf of a customer specifically for resale under the customer's own brand or were provided by the **Insured** to a customer of the **Insured** and have become an ingredient in a product manufactured, distributed or handled by such customer.

**Insured Product(s)** does not include newly introduced or newly developed products described below:

Any product(s) which are newly introduced or newly developed by the **Insured** after the Inception Date of this policy shall be an **Insured Product**, provided written notice is given to the Insurer no less than ninety (90) days prior to the introduction for sale and the Insurer has given written acceptance of such new product(s) within (30) days of receipt. Notwithstanding, the Insurer may condition such acceptance upon changes in one or more of the terms, conditions or premium of this policy.

Variations of existing products and/or new blends are not considered a newly developed product.

* * *

BB. "**Property Damage**" shall mean physical damage to or destruction of tangible property (other than to the **Insured Product(s)** itself) and/or animals and/or livestock.

20. In Section 4, the Primary Policy presents the Exclusions. Exclusions C and V state,

4. **Exclusions**

This policy does not apply to any loss (including Loss as defined) directly or indirectly arising out of, based upon, attributable to:

* * *

C. any dishonest, fraudulent, illegal or criminal act or omission committed by any of the **Insured's Executive Officers**, trustees or assigns;

* * *

V. defects, errors, or omissions of any sort in the design of the **Insured Product** or in the research or development leading up to it.

21. The Primary Policy contains a Governmental Recall Endorsement, which states in pertinent part,

**GOVERNMENTAL RECALL ENDORSEMENT**

* * *

It is understood and agreed that the policy is amended as follows:

I. Section 3, **Definitions**, Item K. **Governmental Recall** is deleted in its entirety and replaced with the following:

K. **Governmental Recall** shall mean:

i. The recall of **Insured Product(s)** which has been initiated:

a. voluntarily by the **Insured**; or

b. as a result of an order by the **Regulatory Bodies**;

**and where either a. or b. above arise directly and solely from a determination by the Regulatory Bodies** that there is a reasonable probability of **Insured Product(s)** causing serious adverse health consequences or death to humans or animals, or unfit for human consumption, or have otherwise been classified as Class **I** or Class **II** by the **Regulatory Bodies**; or

II. Section 3, **Definitions**, is amended by addition of the following:

"**Regulatory Bodies**" shall mean the Food and Drug Administration, the United States Department of Agriculture, the Canadian Food Inspection Agency or any other US or Canadian state or regulatory body with similar authority with regard to food safety

## THE CLAIM

### The French Lentil & Leek Crumbles Product

22. Upon information and belief, DHI is a direct-to-consumer, frozen food brand which began operations in 2016.

23. Upon information and belief, DHI works with manufacturing partners within the U.S. to produce its frozen products.

24. Upon information and belief, the manufacturing partners purchase raw materials from DHI-approved suppliers, which are approved by DHI's Strategic Sourcing Team.

25. Upon information and belief, in April 2022, DHI launched its French Lentil & Leek Crumbles product ("FLLC"), marketed as a ready-to-eat plant-based meat alternative.

26. Upon information and belief, the design of the FLLC intentionally included tara protein flour as an ingredient.

27. Upon information and belief, from launch date (April 28, 2022) to recall date (June 17, 2022), DHI sold 28,387 units of FLLC to 20,044 customers.

28. Upon information and belief, a total of 78,708 FLLC units were produced.

29. Upon information and belief, the co-manufacturer for the FLLC was Stone Gate Foods, located in Shakopee, MN ("SGF").

30. Upon information and belief, the supplier of the tara protein flour ingredient was Smirks, Ltd., located in Fort Morgan, Colorado ("Smirks").

31. Upon information and belief, in November 2021, DHI evaluated tara protein flour's performance as an ingredient in the FLLC recipe and, following final receipt development and testing, DHI and SGF purchased tara protein flour from Smirks exclusively for use in the design of FLLC.

32. Upon information and belief, Smirks arranged for the import of the tara protein flour ingredient from Molinos Associados of Lima, Peru ("MAS").

**FLLC Illness Reports and Recall**

33. Upon information and belief, in or around June 2022, DHI began receiving reports of illness allegedly due to the consumption of the FLLC.

34. Upon information and belief, on June 17, 2022, DHI initiated a voluntary recall of the FLLC.

35. Upon information and belief, DHI sent recall information via emails and texts to the 19,960 customers who received the FLLC.

36. Upon information and belief, recall information and details were posted to DHI's website beginning on June 19, 2022.

37. Upon information and belief, DHI published Recall Updates throughout the spring, summer, and fall of 2022 outlining the various root cause analyses and tests that had been performed on the FLLC in concert with the United States Food and Drug Administration ("FDA") and other experts, and sharing the negative test results for various toxins, pathogens, and allergens following ingredient and finished product testing.

38. Upon information and belief, in the July 19 Recall Update, DHI identified tara protein flour as the cause of their customers' illnesses.

39. Upon information and belief, DHI advised the FDA that it instructed all consumers to discard and not consume the FLLC.

40. Upon information and belief, DHI also advised SGF of the recall and production of FLLC was stopped.

41. Upon information and belief, DHI published a FLLC Recall Update on September 16, 2022 after DHI conducted a "thorough" investigation to determine the root cause of the adverse

health reactions, in coordination with the FDA, Centers for Disease Control and Prevention ("CDC") and local regulatory agencies.

42. Upon information and belief, DHI advised that the FDA concluded that there were no manufacturing deviations or food safety quality failures at SGF that led to the recall.

43. DHI provided Great American with an Initial Statement of Loss dated July 26, 2022.

44. Via letter dated May 23, 2023, Great American denied coverage for the Claim. Now, Great American seeks declaratory relief arising from same.

**FDA's CORE Report**

45. On October 18, 2022, the FDA's Coordinated Outbreak Response and Evaluation Network ("CORE") published an Incident Summary Report, Adverse Illness Event Series/Lentil and Leek Crumbles/Jun 2022 (CARA #1076) ("CORE Report").

46. The CORE Report advised that DHI issued a voluntary recall on June 23, 2022. At that time, the incident consisted of 35 complaint-based illnesses from 12 states and involved 20 hospitalizations. As of October 18, 2022, 393 adverse illnesses were reported in 39 states and involving 133 hospitalizations.

47. Based on FDA CFSAN Adverse Events Reporting System ("CAERS") and Consumer Complaints ("CC"), the illness onset dates were April 19, 2022 through September 4, 2022. The CORE Report notes that SGF filed a Reportable Food Registry for FLLC on June 20, 2022. Six lots of FLLC were listed as implicated by the incident and included in the recall.

48. Per the CORE Report, the FDA and the Minnesota Department of Agriculture ("MDA") initiated a joint inspection of SGF's facility. Prior to and during the joint regulatory inspection, the CORE Report advised that DHI and SGF were simultaneously conducting root cause investigations. SGF advised the FDA that "finished product sample reports indicated product

was tested for several bacteria, yeasts and molds, allergens, and aflatoxin. All test results were negative."

49. The FDA collected finished product and ingredient samples of the FLLC and "findings were unable to determine a potential causative agent for this incident."

50. Pursuant to its analysis, the FDA identified two ingredients of interest: tara protein flour and sacha inchi powder.

51. Per the CORE Report, the Minnesota Department of Health ("MDH") undertook an epidemiologic investigation related to the reported illness events, which provided further evidence that the FLLC were the source of illness.

52. Between June 21, 2022 and August 18, 2022, the FDA collected samples of finished FLLC from different sources. The FDA also collected samples of raw ingredients, including tara protein flour. The CORE Report further advised that all samples were analyzed for general toxins and mycotoxins, including *Salmonella spp*., *Listeria spp*., *E. coli/Coliforms*, and yeast and mold. All results for these samples were reported as negative.

53. In its Enforcement Report for the week of March 15, 2023, the FDA classified DHI's recall of FLLC as Class II.

## **Tara Protein Flour**

54. Upon information and belief, tara protein flower is neither an approved food additive, a Generally Recognized as Safe ("GRAS") substance, nor a New Dietary Ingredient as defined in current U.S. food laws and regulations.

55. Upon information and belief, tara protein flour has not been commonly or widely used or marketed as an ingredient by the U.S. food industry.

**FIRST CAUSE OF ACTION FOR DECLARATORY JUDGMENT**
**(No Accidental Contamination Under Policy's Impairment Provision)**

56. Plaintiff repeats each and every allegation contained in paragraphs "1" through "55" with the same force and effect as if set forth fully herein.

57. Under the Primary Policy's Insuring Agreement, the insurers will reimburse the Insured for a Loss in respect of a Covered Incident, including Impairment. Impairment is defined as "any Accidental Contamination or Defect of the Insured Product."

58. Under the Policy's Definitions section, Accidental Contamination requires any accidental or unintentional contamination of the Insured Product, which causes the Insured Product to differ from its usual condition, provided that the Accidental Contamination occurs during or as a result of the Insured Product's production, manufacture, packaging, storage, or distribution and the use or consumption of the affected Insured Product has resulted in Bodily Injury or Property Damage or in imminent danger of resulting in Bodily Injury or Property Damage.

59. During the claim investigation, DHI did not advise Great American of any contamination event. Rather, DHI advised that the intentional inclusion of tara protein flour in the design of the FLLC recipe was determined to be the root cause of the illnesses and voluntary recall.

60. As DHI's Claim does not involve inadvertent or unintentional contamination, the Claim does not qualify as an Accidental Contamination Impairment Incident.

61. Great American respectfully requests from this Court a declaration of rights and obligations under the Policies.

62. Declaratory relief will resolve outstanding issues regarding the obligations of Great American under the Policies.

63. Great American has no other adequate remedy at law.

64. Great American therefore respectfully demands a declaratory judgment against DHI declaring that there is no coverage under the Policies for the Claim.

65. Great American is entitled to a declaratory judgment finding that there are no obligations under the Policies because pursuant to the several investigations into the cause of the illnesses and as addressed above with respect to Accidental Contamination, DHI has not established that the claim involves an Impairment Covered Incident. On this basis, the Policies do not afford coverage for the claim.

**SECOND CAUSE OF ACTION FOR DECLARATORY JUDGMENT**
**(No Defect Under Policy's Impairment Provision)**

66. Plaintiff repeats each and every allegation contained in paragraphs "1" through 65" with the same force and effect as if set forth fully herein.

67. Under the Policy's Insuring Agreement, Great American will reimburse the Insured for a Loss in respect of a Covered Incident, including Impairment. Impairment is defined as "any Accidental Contamination or Defect of the Insured Product."

68. The Policy's Definitions section defines Defect as a Mislabeling, error, omission, deficiency, or inadequacy of an Insured Product which causes the Insured Product to differ from its usual condition, provided that the error, omission, deficiency, or inadequacy occurs during or as a result of the production, manufacture packaging, storage, or distribution of the affected Insured Product and the use or consumption of the affected Insured Product has resulted in Bodily Injury or Property Damage or imminent danger of resulting in Bodily Injury or Property Damage.

69. The investigations of DHI, SGF, FDA, and MDA have not identified any error, omission, deficiency, or inadequacy involved with the production or manufacture of the FLLC.

70. Based on the information DHI has submitted to regulatory agencies and customers, and the regulatory agencies' investigation findings, DHI has not established that an error,

omission, deficiency, or inadequacy occurred during or as a result of the production, manufacture packaging, storage, or distribution of the FLLC. On this basis, the claim does not constitute a Defect under the Policies.

71. Pursuant to several investigations into the cause of the illnesses and as addressed above with respect to Defect, DHI has not established that the claim involves an Impairment Covered Incident. On this basis, the Policies do not afford coverage for the claim.

72. Great American respectfully requests from this Court a declaration of rights and obligations under the Policies.

73. Declaratory relief will resolve outstanding issues regarding the obligations of Great American under the Policies.

74. Great American has no other adequate remedy at law.

75. Great American therefore respectfully demands a declaratory judgment against DHI declaring that there is no coverage under the Policies for the Claim.

76. Great American is entitled to a declaratory judgment finding that there are no obligations under the Policies because pursuant to the several investigations into the cause of the illnesses and as addressed above with respect to Defect, DHI has not established that the claim involves an Impairment Covered Incident. On this basis, the Policies do not afford coverage for the claim.

**THIRD CAUSE OF ACTION FOR DECLARATORY JUDGMENT**
**(Exclusion V – Defect/Error in Research and Development)**

77. Plaintiff repeats each and every allegation contained in paragraphs "1" through "76" with the same force and effect as if set forth fully herein.

78. Based on the FDA's classification of DHI's FLLC recall as Class II, the claim appears to qualify as a Governmental Recall Covered Incident under the Primary Policy.

79. Exclusion V of the Primary Policy states that the Primary Policy does not apply to any loss (including Loss as defined) directly or indirectly arising out of, based upon, attributable to defects, errors, or omissions of any sort in the design of the Insured Product or in the research and development leading up to it.

80. Pursuant to DHI's statements, the regulatory and commercial inspections, investigations, and findings and the lack of an identified contamination or manufacturing, packaging, or distribution error, the harm caused by FLLC has been identified by DHI as the intentional inclusion of the tara protein flour ingredient in the design of FLLC.

81. During the claim investigation, DHI asserted an error in the research and development of using tara protein flour in the design of the FLLC. Exclusion V excludes coverage directly or indirectly arising out of, based upon, attributable to defects, errors, or omissions of any sort in the design of the Insured Product or in the research and development leading up to it.

82. The application of Exclusion V excludes coverage for the claim under the Policies.

83. Great American respectfully requests from this Court a declaration of rights and obligations under the Policies.

84. Declaratory relief will resolve outstanding issues regarding the obligations of Great American under the Policies.

85. Great American has no other adequate remedy at law.

86. Great American therefore respectfully demands a declaratory judgment against DHI declaring that there is no coverage under the Policies for the Claim.

87. Great American is entitled to a declaratory judgment finding that there are no obligations under the Policies pursuant to Exclusion V. On this basis, the Policies do not afford coverage for the claim.

**FOURTH CAUSE OF ACTION FOR DECLARATORY JUDGMENT**
(FLLC is not an Insured Product)

88. Plaintiff repeats each and every allegation contained in paragraphs "1" through "87" with the same force and effect as if set forth fully herein.

89. FLCC may be considered a newly introduced or newly developed product under the Policies.

90. Upon information and belief, DHI or its representative did not provide written notice to NASIC at least 90 days prior to FLLC's introduction for sale.

91. Upon information and belief, NASIC did not given written acceptance of FLLC.

92. In accordance with the Policies, FLLC is not an Insured Product because it constitutes a newly introduced or newly developed product.

93. FLLC does not qualify as an Insured Product under the Policies and coverage for FLCC is not afforded under the Policies.

94. Great American respectfully requests from this Court a declaration of rights and obligations under the Policies.

95. Declaratory relief will resolve outstanding issues regarding the obligations of Great American under the Policies.

96. Great American has no other adequate remedy at law.

97. Great American therefore respectfully demands a declaratory judgment against DHI declaring that there is no coverage under the Policies for the Claim.

98. Great American is entitled to a declaratory judgment finding that there are no obligations under the Policies because FLLC is not an Insured Product. On this basis, the Policies do not afford coverage for the claim.

**<u>FIFTH CAUSE OF ACTION FOR DECLARATORY JUDGMENT</u>**
**(Exclusion C - Adulterated Product)**

99. Plaintiff repeats each and every allegation contained in paragraphs "1" through "98" with the same force and effect as if set forth fully herein.

100. Exclusion C of the Policy states that the Policy does not apply to any loss directly or indirectly arising out of, based upon, or attributable to any dishonest, fraudulent, illegal, or criminal act or omission committed by any of the Insured's Executive Officers, trustees or assigns.

101. Tara flour or tara protein flour is neither an approved food additive, a Generally Recognized as Safe ("GRAS") substance, nor a New Dietary Ingredient as defined in current U.S. food laws and regulations.

102. Tara protein flour does not have a known history of being commonly or widely used or marketed as an ingredient by the U.S. food industry.

103. Since tara flour or tara protein flour do not have any of the above-described classifications, any food product containing tara flour or tara protein flour is deemed "adulterated" under U.S. food safety laws and regulations, including the Food, Drug and Cosmetic Act (21 U.S. Code § 301 *et seq*), as added to and amended by the Food Safety Modernization Act (124 STAT. 3885 *et seq*).

104. The Food, Drug, and Cosmetic Act prohibits "the introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded." 21 U.S. Code § 331(a).

105. On this basis, it appears DHI placed an adulterated product into interstate commerce, which Great American understands is an illegal act.

106. Coverage for the Loss is excluded in accordance with Exclusion C because FLLC constitutes an adulterated product.

107. Great American respectfully requests from this Court a declaration of rights and obligations under the Policies.

108. Declaratory relief will resolve outstanding issues regarding the obligations of Great American under the Policies.

109. Great American has no other adequate remedy at law.

110. Great American therefore respectfully demands a declaratory judgment against DHI declaring that there is no coverage under the Policies for the Claim.

111. Great American is entitled to a declaratory judgment finding that there are no obligations under the Policies because FLLC is an adulterated product. On this basis, the Policies do not afford coverage for the claim.

**PRAYER FOR RELIEF**

WHEREFORE, Great American respectfully requests that the Court enter judgment in its favor against Defendant as follows:

A. On the First Cause of Action, a judicial declaration that DHI has not established that the claim involves an Impairment Covered Incident arising from Accidental Contamination, which precludes coverage for the Claim;

B. On the Second Cause of Action, a judicial declaration that DHI has not established that the claim involves an Impairment Covered Incident arising from Defect, which precludes coverage for the Claim;

C. On the Third Cause of Action, a judicial declaration that Exclusion V applies, which precludes coverage for the Claim;

D. On the Fourth Cause of Action, a judicial declaration that DHI has not established that FLLC is an Insured Product arising from Defect, which precludes coverage for

the Claim;

E. On the Fifth Cause of Action, a judicial declaration that Exclusion C applies due to violation of the Food, Drug and Cosmetic Act and the Food Safety Modernization Act, which precludes coverage for the Claim;

F. Prejudgment interest;

G. Costs of suit and attorneys' fees; and

H. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Great American demands a jury trial for all claims properly tried to a jury.

Dated: June 1, 2023

**STEWART | SMITH**

_________________________
Joseph F. Bermudez
(Bar I.D. 2285179)
Michael Murphy
(*pro hac vice* forthcoming))
Catherine T. Begley
(Bar I.D. 5955992)
1177 Avenue of the Americas, 5th Fl.
New York, NY 10036
T: (720) 665-9400
F: (484) 534-9470
jbermudez@stewartsmithlaw.com
mmurphy@stewartsmithlaw.com
cbegley@stewartsmithlaw.com
*Attorneys for Plaintiff*
*Great American E&S Insurance Company*